[Cite as *Kirby v. Oatts*, 2020-Ohio-301.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

GEORGE KIRBY, JR., et al.                    :

      Plaintiffs-Appellants                    :     Appellate Case No. 28455

                              :

v.                                           :     Trial Court Case No. 2017-CV-5581

                              :

VIRGIL OATTS, et al.                         :     (Civil Appeal from

                              :     Common Pleas Court)

      Defendants-Appellees                     :

                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of January, 2020.

. . . . . . . . . . .

GEORGE KIRBY, JR., 5371 Washburn Road, Trotwood, Ohio 45426
     Plaintiff-Appellant, Pro Se

SUE SEEBERGER, Atty. Reg. No. 0059730, 5975 Kentshire Drive, Suite D, Dayton, Ohio 45440
     Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, P.J.

     **{¶ 1}** The present appeal concerns a dispute between two groups of individuals

who claim to be the authorized board of trustees for Westbrooke Homes Association, Inc. The first group consists of plaintiff-appellants, George Kirby, Jr., Sylvia Vance, Ernest Curry, and Gwendolyn Carlton ("the Plaintiff Board"). The second group consists of defendant-appellees, Virgil Oatts, Theodore Somerset, Arthur Smith, and Patsy Bryant ("the Defendant Board"). The Plaintiff Board is appealing pro se from a judgment of the Montgomery County Court of Common Pleas that overruled in part and sustained in part the Plaintiff Board's objections to a magistrate's decision that dismissed a majority of the Plaintiff Board's civil claims against the Defendant Board. For the reasons outlined below, the judgment of the trial court will be affirmed in part and vacated in part, and the matter will be remanded to the trial court for further proceedings consistent with this opinion.

**Relevant Facts and Course of Proceedings**

{¶ 2} In 1967, Westbrooke Homes Association, Inc. ("the Association") was formed as a nonprofit corporation to govern a planned community of residential homes located in Trotwood, Ohio, known as Westbrooke Village. According to the Association's Declaration of Covenants and Restrictions ("Declarations") and its Code of Regulations ("Regulations"), the Association is governed by a Board of Trustees ("Board"). Per the Regulations, each trustee must belong to the Association and must be elected by the Association's members.[1] If there is a vacancy on the Board, the Regulations instruct the majority of the remaining trustees on the Board to fill the vacancy by appointment. The

---

[1] An Association member is any person or entity that is a record owner of a Westbrooke property lot.

appointed trustee is then to serve on the Board until a successor is elected at the Association's annual meeting or other special meeting called for that purpose.

{¶ 3} On January 12, 2017, a group of Association members known as the Concerned Homeowner's Group ("CHOG") held a special meeting. The purpose of the special meeting was to have an election to replace the existing Board due to concerns about the financial status of the Association and the existing Board's alleged failure to comply with various provisions of the Association's Declarations and Regulations. The special meeting and election were organized by Kirby, Vance, and Curry, all of whom had previously resigned from the Board. Existing Board members Larry Lewis and James Conlee also took part in organizing the special meeting. Oatts, Somerset, and Smith were existing Board members[2] as well, but they were not part of the CHOG and were not present at the special meeting.

{¶ 4} At the special meeting, the Association members in attendance elected Kirby, Vance, Curry, Lewis, and Paula Stills as the new Board. Stills resigned shortly after the election and was replaced by Carlton. Lewis also resigned, which left Kirby, Vance, Curry, and Carlton, i.e., the Plaintiff Board, as the newly elected Board members. Oatts, Somerset, Smith, and Bryant,[3] i.e., the Defendant Board, refused to recognize the validity of the January 12, 2017 election due to it not complying with the Association's Regulations. Approximately one week after the election, the Defendant Board's legal

---

[2] Oatts was also the acting president of the Association and Somerset was the acting treasurer and secretary.

[3] It is unclear from the record whether Bryant was an existing member of the Board prior to the January 2017 special meeting and election.

counsel sent a correspondence to the Plaintiff Board that threatened legal action if the Plaintiff Board did not cease and desist from representing itself as the valid Board and from acting on behalf of the Association.

{¶ 5} A month later, on February 25, 2017, the Defendant Board held an annual meeting. At the annual meeting, members of the Plaintiff Board moved the Defendant Board to recognize the results of the January 12, 2017 election. The Defendant Board, however, still refused to recognize the election as valid. In response, members of the Plaintiff Board moved for another election to be held at the annual meeting. The Defendant Board refused this request as well, claiming that there was an insufficient quorum present at the meeting. Members of the Plaintiff Board then passed around a petition calling for an election to be held. The petition was signed by several Association members. The Defendant Board disregarded the petition, claiming some of the names on the petition were invalid.

{¶ 6} Following these events, on November 30, 2017, the Plaintiff Board filed a civil action in the Montgomery County Court of Common Pleas asserting four claims against the Defendant Board.[4] For its first claim, the Plaintiff Board requested a judgment declaring whether the January 12, 2017 election was valid. If the election was found invalid, the Plaintiff Board also requested a judgment declaring whether the Plaintiff Board is the duly elected board of trustees until the next election or, alternatively, whether the Defendant Board is required to hold another election.

{¶ 7} For its second claim, the Plaintiff Board requested damages and injunctive

---

[4] The Plaintiff Board later filed an amended complaint on December 7, 2018, adding Westbrook Homes Association as a party to the action.

relief under R.C. 5312.13. Specifically, the Plaintiff Board sought to enjoin the Defendant Board from continuing to act as trustees due to the Defendant Board's failing to comply with several provisions of the Association's Declarations and Regulations and to recover damages for those alleged failures. For its third and fourth claims, the Plaintiff Board asserted claims of replevin and conversion in relation to Association property, which included the Association's financial accounts, books, and other records.

{¶ 8} In addition to its complaint, the Plaintiff Board filed a motion for a temporary restraining order against the Defendant Board. Following a hearing on that motion, the trial court granted a temporary restraining order that enjoined the Defendant Board from taking any action on behalf of the Association, deleting or disposing of Association records, spending Association funds, exercising control over Association assets, and violating the Association's Declarations and Regulations.

{¶ 9} After the temporary restraining order was issued, the Defendant Board filed a motion to dismiss the claims raised by the Plaintiff Board pursuant to Civ.R. 12(B)(1) and 12(B)(6). In support of its motion to dismiss, the Defendant Board argued that the trial court lacked subject-matter jurisdiction over the Plaintiff Board's claims because the claims requested quo warranto relief in that they required the trial court to determine who the valid Board members were. The Defendant Board also argued that the Plaintiff Board lacked standing to initiate a quo warranto action.

{¶ 10} The Defendant Board's motion to dismiss was referred to a magistrate. After taking the matter under advisement, the magistrate granted the motion in part and denied the motion in part. In so holding, the magistrate dismissed the Plaintiff Board's declaratory judgment, replevin, and conversion claims on grounds that those claims could

only be adjudicated through a quo warranto action, i.e., by determining who the valid Board members are. The magistrate held that a quo warranto action can only be initiated in the Supreme Court of Ohio or in a court of appeals by the attorney general or a prosecutor, and therefore it dismissed the aforementioned claims due to the trial court's lacking subject-matter jurisdiction and the Plaintiff Board's lacking standing.

{¶ 11} The magistrate, however, declined to dismiss the Plaintiff Board's claim for injunctive relief and damages under R.C. 5312.13. The magistrate found that this claim was independent from a quo warranto action because it could be adjudicated without determining which individuals should be on the Board. In order to ensure that the Association was in compliance with its Declarations and Regulations, and with Chapter 5312 of the Revised Code, the magistrate ordered the Defendant Board and those members of the Plaintiff's Board who were existing members of the Board at the time of the January 12, 2017 election to hold a special meeting for purposes of electing a new Board within 90 days and to then certify the election results to the trial court.

{¶ 12} Both the Plaintiff Board and the Defendant Board filed objections to the magistrate's decision. After reviewing both parties' objections, the trial court adopted the magistrate's decision to dismiss the declaratory judgment, replevin, and conversion claims on grounds that those claims could only be adjudicated in a quo warranto action. Like the magistrate, the trial court held that it lacked subject-matter jurisdiction to consider a quo warranto action. The trial court did not address the issue of standing.

{¶ 13} The trial court also adopted the magistrate's decision finding that it had subject-matter jurisdiction to consider the Plaintiff Board's claim for injunctive relief and damages under R.C. 5312.13. However, despite this finding, the trial court concluded

that judicial economy would not be promoted if it were to consider the R.C. 5312.13 claim without there being a quo warranto determination. In reaching this decision, the trial court explained that if the Defendant Board members were "ousted from their positions as Board members, then the Court cannot grant Plaintiff's requested relief by commanding the [Defendant Board] to perform certain acts or to cease taking certain action." The trial court also found that it would be "imprudent" for the trial court to consider the corresponding claim for damages because the requested damages were for the same actions for which injunctive relief was being sought. Therefore, the trial court held that it could not consider the R.C. 5312.13 claim at that time and stayed the claim pending a determination of a quo warranto action.

{¶ 14} The Plaintiff Board now appeals from the trial court's judgment adopting the magistrate's dismissal of the Plaintiff Board's declaratory judgment, replevin, and conversion claims and staying the Plaintiff Board's claim for injunctive relief and damages under R.C. 5312.13. In support of its appeal, the Plaintiff Board has raised six assignments of error for review, which we will address out of order for purposes of clarity.

## Third, Fifth, and Sixth Assignments of Error

{¶ 15} Under its third, fifth, and sixth assignments of error, the Plaintiff Board challenges the trial court's judgment adopting the magistrate's decision dismissing its declaratory judgment, replevin, and conversion claims. Specifically, the Plaintiff Board contends that the trial court erroneously determined that those claims were in the nature of a quo warranto action that it did not have subject-matter jurisdiction to consider. We disagree.

{¶ 16} "A trial court must dismiss for lack of subject-matter jurisdiction if the complaint fails to raise a cause of action cognizable by the forum." *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, ¶ 15, citing *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). "Because whether a court possesses subject[-]matter jurisdiction is a question of law, appellate courts review a dismissal for lack of subject-matter jurisdiction de novo." (Citation omitted.) *Id.*; *In re Gill*, 2d Dist. Clark No. 2019-CA-44, 2019-Ohio-4798, ¶ 7. "De novo review requires an 'independent review of the trial court's decision, without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft*, 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶ 27 (3d Dist.).

{¶ 17} In adopting the magistrate's dismissal of the Plaintiff Board's declaratory judgment, replevin, and conversion claims, the trial court held that those claims were in the nature of a quo warranto action which it did not have subject-matter jurisdiction to consider. Quo warranto actions are governed by Ohio Revised Code Chapter 2733. Pursuant to R.C. 2733.01(A), a civil action in quo warranto may be invoked when a person allegedly "usurps, intrudes into, or unlawfully holds or exercises * * * an office in a corporation created by the authority of this state."

{¶ 18} A quo warranto action is " 'the proper and exclusive remedy for determining the legal right of an officer of an incorporated nonprofit association to hold office.' " *State ex rel. Gmoser v. Village at Beckett Ridge Condominium Owners' Assn., Inc.*, 2016-Ohio-8451, 82 N.E.3d 464, ¶ 15 (12th Dist.), quoting *Carlson v. Rabkin*, 152 Ohio App.3d 672, 2003-Ohio-2071, 789 N.E.2d 1122, ¶ 35 (1st Dist.); *Greater Temple Christian Church v.*

*Higgins*, 9th Dist. Summit No. 23022, 2006-Ohio-3284, ¶ 17; *see also State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054, ¶ 16. "In a quo warranto action against a person for usurping a corporate office, the court will render judgment on the rights of the claimants to hold that office, and oust and exclude a usurper from the office." *Masjid Omar Mosque*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, at ¶ 18, citing R.C. 2733.08 and R.C. 2733.14.

{¶ 19} Jurisdiction for quo warranto actions is statutorily established in R.C. 2733.03. That statute provides "[a]n action in quo warranto can be brought only in the supreme court, or in the court of appeals of the county in which the defendant, or one of the defendants, resides or is found, or, when the defendant is a corporation, in the county in which it is situated or has a place of business." R.C. 2733.03. Therefore, jurisdiction for quo warranto actions is "exclusively vested in the courts of appeals and the Supreme Court." (Citation omitted.) *State ex rel. Battin v. Bush*, 40 Ohio St.3d 236, 238, 533 N.E.2d 301 (1988). In turn, "the courts of common pleas are without jurisdiction over actions in quo warranto." (Citation omitted.) *Id.*

{¶ 20} While it is clear a trial court lacks subject-matter jurisdiction to consider quo warranto actions, the Plaintiff Board contends that its declaratory judgment, replevin, and conversion claims were not in the nature of a quo warranto action and should not have been dismissed on that basis. In support of this argument, the Plaintiff Board largely relies on this court's decision in *N. Dayton First Church of God v. Berger*, 2d Dist. Montgomery No. 18171, 2000 WL 1597963 (Oct. 27, 2000).

{¶ 21} Similar to the case at bar, *N. Dayton First Church of God* involved a conflict between two groups of individuals—the "Walker Group" and the "Berger Group"—who

both claimed to be the valid trustees and officers of a church that was set up as a non-profit corporation. *Id.* at *1. The Berger Group filed a complaint asking the common pleas court to issue a judgment declaring that its members were the legal trustees and officers of the church pursuant to an election that was held at a special meeting called by the Berger Group. *Id.* Following a trial, the trial court concluded that the special meeting had not been properly called pursuant to the church's bylaws, but that it had been properly called pursuant to Ohio statutory law. As a result, the trial court found that the election was valid and ruled that the Berger Group had been properly elected as trustees and officers of the church. *Id.*

{¶ 22} The Walker Group consisted of the trustees and officers in place prior to the election at issue. The Walker Group appealed from the trial court's judgment and argued that the trial court exceeded its jurisdiction when it replaced the Walker Group as the officers and trustees of the church, because such an action was in the nature of quo warranto relief that could only be granted by the Supreme Court of Ohio or a court of appeals. *Id.* at *3. In response to the Walker Group's argument, this court stated that: "Any claims that are ancillary to a quo warranto action, * * * such as claims pertaining to damages or the rights and obligations of the parties, are properly within the jurisdiction of the courts of common pleas and should be disposed of by those courts." (Citation omitted.) *Id.* at *4. We further stated that "the type of relief requested by the complaining party, although relevant, is not controlling of the question of whether a common pleas court's action was in the nature of quo warranto relief." (Citation omitted.) *Id.*

{¶ 23} In applying these principles, we held that the trial court did not grant the

Berger Group quo warranto relief because its ruling "did not oust the Walker group but instead found that the members of the church had actually validly ousted them at the * * * special meeting." *Id.* We further held that such a finding was merely a declaration of the legal rights of the Berger Group, which "was within the jurisdiction of the trial court as it pertained to the parties' rights under the church's bylaws and Ohio statutory law." *Id.* at *4-5. However, we noted that if the trial court had specifically declared the special meeting to be null and void, then the trial court would have been in effect removing the trustees and officers that the church members had validly elected from their positions and such action would have been in the nature of quo warranto relief. *Id.* at *5.

{¶ 24} More recently, the Tenth District Court of Appeals held that when determining whether a party is seeking quo warranto relief, courts must "identify the core issues raised by the parties for judicial resolution." *Masjid Omar Mosque*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, at ¶ 20. *Accord Gmoser*, 2016-Ohio-8451, 82 N.E.3d 464, at ¶ 38. The Tenth District also explained that "[i]f the principal or primary issue is the validity of the election of corporate officers, then the action, no matter how pleaded, is actually a quo warranto action." *Id.*, citing *State ex rel. Babione v. Martin*, 97 Ohio App.3d 539, 544, 647 N.E.2d 168 (6th Dist.1994) and *Goldberg v. Rite Rug Co.*, 10th Dist. Franklin No. 82AP-135, 1983 WL 3584 (June 23, 1983). (Other citations omitted.) If the core relief sought is "a declaratory judgment stating which claimant has a right to office and/or an injunction ordering the removal of a person from office, then the action must be pursued through a quo warranto action." *Id.*, citing *Greater Temple Christian Church,* 9th Dist. Summit No. 23022, 2006-Ohio-3284, at ¶ 17-18; *Strah v. Lake Cty. Humane Soc.*, 90 Ohio App.3d 822, 828, 631 N.E.2d 165 (11th Dist.1993);

*Hendershot v. Conner*, 48 Ohio App.2d 335, 337, 357 N.E.2d 386 (9th Dist.1974); *Capri v. Johnson*, 32 Ohio App.2d 95, 98, 288 N.E.2d 604 (10th Dist.1972).

**{¶ 25}** The Tenth District's opinion in *Masjid Omar Mosque* involved a dispute about who the legitimate board members were of a Columbus mosque that operated as non-profit corporation. *Masjid Omar Mosque* at ¶ 2-12. Through its original board members, the mosque filed a complaint against a group of individuals who were elected as new board members at a special meeting. *Id.* at ¶ 8. The complaint alleged claims of fraudulent misrepresentation, intentional interference with business relationships, and civil conspiracy. *Id.* In support of these claims, the original board alleged that the new board fraudulently attempted to gain control over the mosque's governance and bank accounts and unlawfully interfered with the mosque's business relationships. *Id.*

**{¶ 26}** In addition to seeking damages, the original board in *Masjid Omar Mosque* requested that the trial court grant an injunction requiring that the new board disclose to certain businesses that it had no authority to control, conduct or direct the affairs of the mosque and to restrain the new board from representing to members of the mosque and to third parties that it had such authority. *Id.* In response to the complaint, the new board filed a counterclaim requesting the trial court to issue a declaratory judgment stating that it, not the original board, was the legitimate board. *Id.* at ¶ 9.

**{¶ 27}** Upon review, the trial court in *Masjid Omar Mosque* found that the core issue that would determine the action was which board had the authority to govern the mosque and that only a quo warranto action could resolve that issue. *Id.* at ¶ 13. The trial court held that it lacked subject-matter jurisdiction over quo warranto actions and therefore dismissed the entire action. *Id.* The original board appealed the dismissal.

*Id.* at ¶ 14.   On appeal, the Tenth District affirmed the dismissal in part and held:

Here, the trial court considered the substance of the parties' dispute, and it determined that the core issue it would have to decide was the validity of the election of the [new] board.   The trial court thus concluded that the dispute would have to be resolved through a quo warranto action.   [The original board] argues that the court should have instead focused on the remedy sought and, because [the original board] did not seek ouster of the [new] board, the court should have decided that the action was not actually in the nature of quo warranto.   We disagree.   In its complaint and motion for a temporary restraining order, [the original board] requested that the trial court require defendants to declare that they had no authority to control, conduct, or direct the affairs of [the mosque] and restrain defendants from representing to anyone that they had that authority.   Thus, [the original board] wanted an order that would, in essence, force the members of the [new] board to oust themselves from the offices they claim title to.   [The original board] can only achieve that remedy through a quo warranto action.

*Id.* at ¶ 21.   *See also Gmoser* at ¶ 38 (finding that a plaintiff board member's request for a common pleas court to issue a declaratory judgment holding that the actions of a condominium association to remove him and other members from the association's board were invalid and that their replacement was invalid was in effect a request for relief that could only be granted by a writ of quo warranto).

{¶ 28} Like in *Masjid Omar Mosque*, we find that the core relief sought by the Plaintiff Board with regard to its declaratory judgment, replevin, and conversion claims

was to essentially oust the Defendant Board. The Plaintiff's Board's request for a declaratory judgment primarily asked the trial court to determine whether the January 12, 2017 election of the Plaintiff Board was valid. As noted in *Masjid Omar Mosque*, "[i]f the principal or primary issue is the validity of the election of corporate officers, then the action, *no matter how pleaded*, is actually a quo warranto action." (Emphasis added.) *Masjid Omar Mosque,* 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, at ¶ 20.

{¶ 29} Furthermore, in its complaint, the Plaintiff Board specifically requested that, if the trial court declared the January 12, 2017 election to be valid, the trial court issue an order for the Defendant Board to "cease and desist representing themselves as Trustees; * * * cooperrate with the Plaintiffs in transferring any financial accounts into the names of Plaintiffs; * * * [and] surrender any and all property of the Association to Plaintiffs[.]" Plaintiff's First Amended Complaint (Dec. 7, 2011), p. 29. The Plaintiff Board also requested the trial court to order "[a]ll financial institutions to recognize Plaintiffs as the Trustees of the Association[.]" *Id*. These requests clearly indicate that the Plaintiff Board's request for a declaratory judgment was for purposes of ousting the Defendant Board.

{¶ 30} In addition, the Plaintiff Board's claims for replevin and conversion necessarily require a quo warranto determination as to who the validly elected Board members are. " 'A replevin action provides the means to obtain possession of specific personal property that one has a right to possess. Where one claims title to, and the right to immediate possession of, specific personal property which is wrongfully detained from him, he has the right to recover possession of that property by an action in replevin.' " *Bono v. McCutcheon*, 159 Ohio App.3d 571, 2005-Ohio-299, 824 N.E.2d 1013, ¶ 15 (2d

Dist.), quoting *Walther v. Central Trust Co.*, *N.A.*, 70 Ohio App.3d 26, 31-32, 590 N.E.2d 375 (2d Dist.1990), citing *Serv. Transport Co. v. Matyas*, 159 Ohio St. 300, 112 N.E.2d 20 (1953), paragraph one of syllabus.

{¶ 31} Similarly, a claim for conversion arises when a person wrongfully exercises dominion or control over property in denial of or under a claim inconsistent with the rights of another. *Id.; Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (2d Dist.). Therefore, to succeed on a conversion claim involving the unlawful retention of property, it must be established that the possessor refused to deliver the property to its rightful owner. *Dice* at ¶ 17.

{¶ 32} In order for the Plaintiff Board to succeed on its replevin and conversion claims, the trial court would be required to assume that the Plaintiff Board were the validly elected Board, as these were claims that only the true owner of the property could bring. The Association is undoubtedly the true owner of the property at issue. But the trial court cannot grant possession of the property to the Association's authorized agents until first determining who those agents are by identifying the validly elected Board. We therefore agree with the trial court that such a determination may only be determined through a quo warranto action. We further note that no claims for replevin or conversion were brought in *N. Dayton First Church of God*, thus making that case distinguishable from the instant matter.

{¶ 33} For the foregoing reasons, we find that the trial court did not err in adopting the magistrate's decision dismissing the Plaintiff Board's declaratory judgment, replevin, and conversion claims for lack of subject-matter jurisdiction. The trial court, and the magistrate, correctly determined that the aforementioned claims requested quo warranto

relief that only the Supreme Court of Ohio or a court of appeals can address.

{¶ 34} The Plaintiff Board's third, fifth, and sixth assignments of error are overruled.

## Fourth Assignment of Error

{¶ 35} Under its fourth assignment of error, the Plaintiff Board challenges the trial court's order staying its claim for injunctive relief and damages under R.C. 5312.13. As previously noted, the trial court adopted the magistrate's decision finding that it had subject-matter jurisdiction over the R.C. 5312.13 claim because it is independent from a quo warranto action in that it could be adjudicated without determining who the validly elected Board members were. We agree with that decision; however, we disagree with the trial court's decision to stay the claim until a quo warranto determination is made in the appropriate court.

{¶ 36} As previously noted, the trial court found it would be inappropriate and not in the interest of judicial economy to take any action on the Plaintiff Board's R.C. 5312.13 claim without there first being a quo warranto action to determine who the valid Board members were. Specifically, the trial court explained that it would be imprudent to grant the Plaintiff Board the requested relief under R.C. 5312.13 if the Defendant Board was later ousted in a quo warranto action. The trial court held that, if that were to occur, it would be unable to command the Defendant Board to perform or cease taking certain actions.

{¶ 37} We, however, find that the trial court's reasoning for staying the R.C. 5312.13 claim was flawed. This is because the Plaintiff Board does not have standing

to initiate a quo warranto action. Standing to initiate a quo warranto action is statutorily established in R.C. 2733.05 and R.C. 2733.06. Under those statutes, "standing in quo warranto is given exclusively to the attorney general and county prosecutors with a single exception: persons who claim entitlement to a *public office.*" (Emphasis sic.) *Salim*, 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054, at ¶ 21. No other exceptions exist. *Id.* A private person may bring an action in quo warranto " ' "only when he personally is claiming title to a public office." ' " *State ex rel. Hawthorn v. Russell*, 107 Ohio St.3d 269, 2005-Ohio-6431, 838 N.E.2d 666, ¶ 6, quoting *State ex rel. E. Cleveland Fire Fighters' Assn.*, *Local 500, Internatl. Assn. of Fire Fighters v. Jenkins,* 96 Ohio St.3d 68, 2002-Ohio-3527, 771 N.E.2d 251, ¶ 10, quoting *State ex rel. Annable v. Stokes*, 24 Ohio St.2d 32, 262 N.E.2d 863 (1970).

{¶ 38} " ' "[T]he most general distinction of a public office is that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the state." ' " *Salim* at ¶ 23, quoting *State ex rel. Cain v. Kay*, 38 Ohio St.2d 15, 18, 309 N.E.2d 860 (1974), quoting *State ex rel. Atty. Gen. v. Jennings*, 57 Ohio St. 415, 424, 49 N.E. 404 (1898). "An officer of a private corporation cannot be said to be performing any function that is 'part of the sovereignty of the state' no matter how beneficial to the public the corporation may be." *Id.* at ¶ 24. Therefore, "a private person cannot sustain a quo warranto action against the officers of a private corporation." *Id.* at ¶ 12, citing *Hawthorn* (holding that private persons claiming to be lawful directors of a religious non-profit corporation lack standing to oust others claiming to be the lawful directors by way of an action in quo warranto).

{¶ 39} In this case, the Plaintiff Board is a group of individuals claiming to be the

validly elected Board members of a private nonprofit corporation—it is not claiming title to a public office. As a result, the Plaintiff Board does not have standing to initiate a quo warranto action. While the magistrate reached this conclusion when dismissing the Plaintiff Board's declaratory judgment, replevin, and conversion claims, the trial court did not specifically address the issue of standing. The trial court instead adopted the magistrate's dismissal based solely on the trial court's lack of subject-matter jurisdiction. While that decision was not erroneous, when considering the Plaintiff Board's lack of standing, the trial court's stay of the Plaintiff Board's R.C. 5312.13 claim is untenable. This is because, unless the attorney general or prosecutor decides to take up the Plaintiff Board's cause, a quo warranto action will never be initiated. Therefore, by ordering the Plaintiff Board's claims under R.C. 5312.13 to be stayed until a quo warranto action is determined, the trial court has in all likelihood prevented the claim from ever being heard given the Plaintiff Board's lack of standing.

{¶ 40} We note that in *Salim*, 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054, the Supreme Court of Ohio affirmed the denial of a petition for a writ of quo warranto to oust certain individuals from the board of a private, non-profit corporation due to lack of standing on grounds that a private person cannot sustain a quo warranto action against the officers of a private corporation. *Id.* In *Salim*, the appellants argued that unless they were allowed to bring a quo warranto action or were able to direct the attorney general to bring such an action, they would be without a remedy. *Id.* at ¶ 27. In addressing that argument, the Supreme Court of Ohio agreed with the Tenth District Court of Appeals in *Masjid Omar Mosque*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, which stated the following: " 'While we recognize that the statutory requirements of R.C. Chapter 2733

place relators in a difficult position, relators' plight is not a reason to allow them to proceed with this [quo warranto] action.' " *Salim* at ¶ 27, quoting *Masjid Omar Mosque* at ¶ 23. Therefore, the Supreme Court held that "despite the fact that appellants and similarly situated litigants may have no remedy if they cannot persuade the attorney general or a prosecutor to initiate a case, the statutes allow no other outcome. This fact may raise an issue for the legislature to address, but it is not a reason to allow appellants to proceed." *Id*. Therefore, simply because the statutory mandates governing standing for quo warranto actions leave the Plaintiff Board without a remedy to determine the validly elected Board does not affect our decision; this is an issue for the legislature to address.

{¶ 41} Because a quo warranto action cannot be initiated by the Plaintiff Board, we find that it was error for the trial court to order a stay of the Plaintiff Board's claim for injunctive relief and damages under R.C. 5312.13 until a quo warranto determination is made. As previously noted, only the attorney general or a prosecutor has standing to bring a quo warranto action. Since the Plaintiff Board cannot force the attorney general or a prosecutor to bring such an action, it is uncertain whether a quo warranto determination would ever be made. Therefore, staying the R.C. 5312.13 claim did not promote judicial economy, but hindered it, as it likely halted the claim indefinitely. Accordingly, we find that the trial court should have proceeded with adjudicating the R.C. 5312.13 claim as opposed to staying the matter.

{¶ 42} The Plaintiff Board's fourth assignment of error is sustained.

**First and Second Assignments of Error**

**{¶ 43}** Under its first and second assignments of error, the Plaintiff Board takes issue with the trial court's adopting certain findings of fact made by the magistrate. These findings of fact were: (1) Ernest Curry was a member of the Board on or near August 23, 2016; and (2) Oatts, Somerset, and Kirby were re-elected to the board at the February 25, 2017 annual meeting. According to the Plaintiff Board, these findings are not supported by the record.

**{¶ 44}** Upon review, we agree that both findings of fact the Plaintiff Board complains of were erroneous. However, the erroneous findings in question have no effect on the decision appealed from and therefore constitute harmless error. That is, regardless of the erroneous findings, the trial court lacked subject-matter jurisdiction over the Plaintiff Board's declaratory judgment, replevin, and conversion claims due to those claims requiring a quo warranto determination. The erroneous facts also do not change the fact that the trial court has subject-matter jurisdiction over the Plaintiff Board's claim for injunctive relief and damages under R.C. 5312.13.

**{¶ 45}** We further find that the Plaintiff Board did not object to the incorrect finding about Curry in its objections to the magistrate's decision. With regard to magistrate's decisions, Civ.R. 53(D)(3)(a)(iii) provides that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). Section (ii) of Civ.R. 53(D)(3)(b) states that "an objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." The Plaintiff Board did not object to the erroneous finding of fact concerning

Curry; therefore, it may not be raised as an assignment of error on appeal.

{¶ 46} The Plaintiff Board's first and second assignments of error are overruled.

## Conclusion

{¶ 47} Having overruled the Plaintiff Board's first, second, third, fifth, and sixth assignments of error, the judgment of the trial court adopting the magistrate's decision dismissing the Plaintiff Board's declaratory judgment, replevin, and conversion claims is affirmed.  Having sustained the Plaintiff's Board's fourth assignment of error, the trial court's order to stay the Plaintiff Board's claim for an injunction and damages under R.C. 5312.13 is vacated, and the matter is remanded to the trial court for further proceedings on that claim.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

George Kirby, Jr.
Sue Seeberger
Ernest Curry
Gwendolyn Carlton
Sylvia Vance
Hon. Michael W. Krumholtz